UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
**CASE NO. 1:06-CV-00007-R**

DILLARD DANIEL, *et al.*                                                                                     PLAINTIFFS

v.

KENDRA WILSON, *et al.*                                                                                  DEFENDANTS

### MEMORANDUM OPINION

Defendant Kendra Wilson ("Wilson"), the only remaining Defendant in this matter, filed a Motion for Summary Judgment (Docket # 26). Plaintiffs responded to this Motion (Docket # 31). Defendant Wilson then filed a Reply (Docket # 32). The matter is now ripe for adjudication. The Court now holds that the Defendant Wilson's Motion for Summary Judgment is hereby GRANTED.

### BACKGROUND

This case arises out of Defendants' mistaken attempt to serve a validly executed warrant on Plaintiff Dillard Daniel ("Mr. Daniel"). On September 27, 2005, Mr. Daniel was indicted by the Russell County, Kentucky, Grand Jury for a felony offense, and an indictment warrant was issued that same day. Wilson was assigned as the investigating officer for Mr. Daniel's case and intended to serve the warrant herself. Unbeknownst to Wilson, Mr. Daniel had spoken to the Russell County Sheriff and appeared at the Russell County Clerk's Office to post bond on the warrant on September 30, 2005. However, Mr. Daniel was not officially processed for fingerprints or photographs as required by his felony charge at that time.

Late in the evening of September 30, 2005, Wilson prepared to personally serve the

warrant to Mr. Daniel, as she believed it was her duty to do. Cognizant that the warrant had been outstanding for three days, Wilson contacted the Russell County Sheriff's Office and the Russell County Detention Center to confirm that warrant was still outstanding. She also unsuccessfully attempted to contact the Russell County Clerk's Office. Having confirmed the warrant's continued validity with the Sheriff's Office and Detention Center, Wilson proceeded to take steps to serve the warrant.

     First, Wilson, accompanied by Trooper Jeremy Johnson, Deputy Mike Sinclair, and Deputy Tim Pierce, sought Mr. Daniel at the residential address listed on the warrant. Wilson knocked, and the door was answered by Gladys Daniel ("Ms. Daniel"). Ms. Daniel informed Wilson that Mr. Daniel was not present at the residence. According to Wilson, she asked Ms. Daniel whether she might search the residence. Ms. Daniel claims that Wilson did not ask to search the residence, but neither does she claim to have denied the officers entry to her home. The parties agree that the officers conducted a short and noninvasive search of the residence. At one point, the officers examined a bedroom. Ms. Daniel offered to turn on the light, but Wilson directed her that would not be necessary. Mr. Daniel was not located on the premises.

     Next, the officers visited a duplex where Ms. Daniel indicated Mr. Daniel resided. The current residents, Miranda Butrum and Joe Sizemore, granted the officers consent to search for Mr. Daniel. Mr. Daniel, however, was not present at the duplex. The officers continued their search for Mr. Daniel and proceeded to another residence they believed he owned. Before arriving and searching the third residence, Russell County Sheriff Larry Bennett informed the officers that Mr. Daniel had posted bond earlier that day and no longer needed to be served. Immediately, the officers ceased attempts to serve Mr. Daniel.

In his deposition, Mr. Daniel admits that he did not reside at Ms. Daniel's home, nor did he have any ownership interest in the property. Mr. Daniel does state that he owned the duplex. However, Mr. Daniel admits that he did not reside at the duplex and rented the property to Ms. Butrum and Mr. Sizemore.

Mr. Daniel, Mrs. Daniel, Ms. Butrum, and Mr. Sizemore filed this suit against the Defendants, Kendra Wilson and Martin Wesley.[1] Plaintiffs claim that Defendants, by entering and searching the above-mentioned residences, violated the Fourth Amendment rights of each of the Plaintiffs by conducting unlawful searches. Wilson responds with the following arguments: Mr. Daniel had no expectation of privacy in the residences searched, and cannot claim that his Fourth Amendment rights were violated; Mr. Daniel was never "seized" by the officers; Wilson properly conducted the searched under the belief that she held a valid and effective warrant; and Wilson is protected by qualified immunity.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file,

---

[1] During discovery, Plaintiffs found that Jeremy Johnson, not Martin Wesley, accompanied Wilson in her attempt to serve Mr. Daniel his warrant. At this time, Plaintiffs agreed to dismiss Martin Wesley from the case and filed an Amended Complaint naming Jeremy Johnson as a defendant. Jeremy Johnson was not properly served with a summons within 120 days of the Amended Complaint as required by Federal Rule of Civil Procedure 4 (m). The Plaintiff has not shown good cause for the delay in service; therefore the Court cannot grant an extension in time for Plaintiffs to serve Jeremy Johnson. While Jeremy Johnson is not properly before the Court, the Court notes that any claims against Jeremy Johnson would be unlikely to succeed for the same reasons stated in this Opinion.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "The plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment. "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 247-49).

## ANALYSIS

**I. Standing under the Fourth Amendment**

Plaintiffs claim that Wilson violated their Fourth Amendment rights when she searched Ms. Daniel's home and the duplex in which Ms. Butrum and Mr. Sizemore reside. To succeed in

their Fourth Amendment claims of an illegal search, Plaintiffs must show standing. They must "demonstrate that [they] personally ha[ve] an expectation of privacy in the place searched, and that [their] expectation is reasonable; *i.e.*, one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 and n.12 (1978)).

Mr. Daniel admitted that he neither owned nor resided at Ms. Daniel's home. He also does not claim to have stayed as a guest at the home around September 30, 2005. Mr. Daniel did not manifest a subjective expectation of privacy in Ms. Daniel's home near the time of the search. Therefore, Mr. Daniel could have no expectation of privacy in Ms. Daniel's home cognizable under Fourth Amendment jurisprudence. *See California v. Ciraolo*, 476 U.S. 207, 211 (1986); *Rakas*, 439 U.S. at 140. Mr. Daniel does state that he owned the duplex Wilson searched, but that he did not reside there at the time of the search. Mere ownership of rental property does not give Mr. Daniel standing to assert Fourth Amendment claims of illegal search on the property. *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994) (recognizing that a property owner must have a personal expectation of privacy under the Fourth Amendment, and cannot assert Fourth Amendment right vicariously on the part of the owner's tenants). *See also United States v. Salvucci*, 448 U.S. 83, 91 (1980) (stating that property ownership does not conclusively establish an expectation of privacy on the property). The Court holds that Mr. Daniel has no standing to claim that Wilson's searches violated his Fourth Amendment rights. As residents of the buildings Wilson searched, the Court holds that Ms. Daniel, Ms. Butrum, and Mr. Sizemore do have a legitimate expectation of privacy in their own homes and have standing to challenge

the legality of the searches.

## II.  Merits of Mr. Daniel's Claim of Illegal Seizure

Mr. Daniel also claims that Wilson violated his Fourth Amendment right protecting him from unreasonable seizure.  "Only when the officer, by means of a physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).  Even short detentions may constitute a seizure "within the meaning of the Fourth Amendment, 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Delgado*, 466 U.S. at 215 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  In this case, Mr. Daniel makes no claims that he experienced any personal show of physical force or authority from Wilson.  He never encountered Wilson in her attempt to serve him with a warrant, nor was Mr. Daniel restrained from any activities in the short duration of Wilson's search.  Therefore, for Fourth Amendment purposes, no seizure of Mr. Daniel occurred as a result of Wilson's search. He has no standing to assert any Fourth Amendment claims against Wilson arising from her attempts to serve him his warrant.

## III.  Wilson's Qualified Immunity Defense

The Supreme Court has held that an officer may assert qualified immunity against Fourth Amendment claimants.  *Saucier v. Katz*, 533 U.S. 194, 200-07 (2001).  The qualified immunity defense asserted by Wilson first requires the Court to determine whether the facts, when viewed in a light most favorable to Plaintiffs, show the officer's conduct violated a constitutional right. *Id.* at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  If the Plaintiff cannot make the

case that a constitutional right was violated, the qualified immunity inquiry stops. However, if a constitutional right may have been violated, the Court must consider whether the right asserted by the Plaintiffs is "clearly established." *Id.* A "clearly established" right will be so well developed that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* At 202 (quoting *Graham v. Connor*, 490 U.S. 386, 440 (1989)). *See also Wilson v. Layne*, 526 U.S. 603, 615 (1999). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct... If the officer's mistake as to what the law requires is reasonable... the officer is entitled to the immunity defense." *Id.* at 205. The Supreme Court states that an officer is entitled to qualified immunity if "the facts and knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the officer's action was proper. *Id.* at 207 (quoting *Hunter v. Bryant*, 502 U.S. at 228) (establishing the probable cause standard for adjudicating the propriety of an officer's actions for qualified immunity purposes).          The Court first examines whether, construing all facts in the favor of Plaintiffs, a constitutional violation could be found. Ms. Butrum and Mr. Sizemore do not contest that they consented to the officers' search of their residences. Since the officers entered the duplex based on consent and did not exceed the scope of that consent in their search, a valid warrant was not necessary to make the search reasonable. Therefore, Ms. Butrum and Mr. Sizemore cannot maintain claims for unconstitutional searches against Wilson. Interpreting the facts in the light most favorable to Ms. Daniel, the Court must assume that Ms. Daniel was neither asked, nor did she grant, the officers consent to search her home. As a potentially unlawful search may have occurred here, the Court must continue its qualified immunity

analysis.[2]

The Court then must determine whether a reasonably prudent officer would have proceeded to serve the warrant in Wilson's situation and whether Wilson should have known that her conduct violated Plaintiffs' constitutional rights. The parties do not contest that the warrant no longer needed to be served on Mr. Daniel. However, Wilson took necessary steps to confirm the validity of the properly granted warrant. She had received no information that the warrant did not still require service and called the Sheriff's Office and Detention Center to confirm the warrant's validity. Though she could not reach the Court Clerk's Office, she had no reason to believe its information would differ from the Sheriff's. Had the statutorily required steps been taken to fingerprint and photograph Mr. Daniel at the time of his bond, the Sheriff's Office and Detention Center contacted by Wilson should have informed her that Mr. Daniel no longer needed to be served the warrant. In fact, Wilson only knew to call off the search when the Sheriff's Office contacted her to correct its misstatement that the warrant remained valid. While a law enforcement officer will not be entitled to qualified immunity in executing a warrant if it is obvious that no reasonable officer would have concluded that the warrant should have issued, that is not the case here. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700-01 (6th Cir. 2006). Wilson made three inquiries into the continued validity of the warrant. After receiving

---

[2]Ms. Daniel also asserts that, even if Wilson could constitutionally conduct the search, of her home, the search was conducted in an unconstitutional way. Ms. Daniel stated in her deposition that the search lasted no more than fifteen minutes, that many rooms were not checked, and that the lights remained off during the search so not to disturb Ms. Daniel's sleeping children. The Court cannot find that such a minimally invasive search exceeded Wilson's constitutional license to search for Mr. Daniel in the home.

information from two sources that the warrant was still valid, she proceeded to serve the warrant. While looking for Mr. Daniel, Wilson did not conduct searches more invasive than necessary. She asked for and obtained consent from the Ms. Butrum and Mr. Sizemore, and may have done the same for Ms. Daniel. Kentucky courts have found that, in similar circumstances, an officer might reasonably and constitutionally act on a warrant which is several days old if they are mistakenly uninformed that bond has been posted. *See Commonwealth v. Vaughn*, 117 S.W.3d 109 (Ky. App. 2003). The Court can only find that Wilson acted reasonably in researching the validity of the warrant. At the time she proceeded with the search, she had a warrant which was valid on its face, legitimate support for her belief that it continued to be valid, and proceeded only on the basis of mistaken information and immediately stopped her search when she was informed that the warrant no longer needed to be served. Therefore, qualified immunity protects Wilson from continued claims on this matter from the Plaintiffs.

Plaintiffs claim that issues of fact remain as to whether Wilson's conduct in searching Ms. Daniel's house was reasonable, making summary judgment inappropriate. According to Plaintiffs, the Court should reserve questions of qualified immunity until a factfinder may pass on the issue of reasonableness of Wilson's conduct. Specifically, Plaintiffs assert that issues of fact remain regarding the length and invasiveness of the search of Ms. Daniel's home, Wilson's subjective beliefs at the time of the search, and the reasons that the Sheriff's Office and Detention Center mistakenly neglected to tell Wilson of Mr. Daniel's posting of bond. However, qualified immunity is properly decided by the Court before trial as a matter of law. *Saucier*, 533 U.S. at 200-01 ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of a trial are avoided where the

defense is dispositive... The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (internal citations omitted)(emphasis in original)). Since qualified immunity protects Wilson from suit in this matter, no issues of fact remain.

## CONCLUSION

Defendant Wilson's Motion for Summary Judgment is GRANTED. An appropriate Order shall issue.